[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action seeking a dissolution of the marriage on the ground of irretrievable breakdown, custody of the minor children and other relief. The defendant husband appeared by counsel, admitted all of the allegations and filed a cross-complaint, seeking a dissolution of the marriage, joint custody of the minor children and other relief.
At the hearing, both parties testified and offered documentary evidence. At the close of testimony, both parties rested, reserving the right to file briefs and documentary materials concerning the terms and provisions of the husband's annuity and retirement plans; the wife filed a CT Page 9159 memorandum, and the husband filed the documentary annuity/pension materials, thereby completing the trial.
From the evidence, the court finds the following facts.
The plaintiff wife, whose maiden name was Donna Christina, married the defendant husband at Waterford, Connecticut, on May 24, 1981. She has resided continuously in the State of Connecticut for at least one year before the filing of the complaint and the commencement of this action. All statutory stays have expired and this court has jurisdiction.
The parties have three minor children issue of the marriage, Thomas Bateman, III, born July 11, 1983, Nicole Bateman, born May 15, 1987, and Christina Bateman, born June 23, 1988. No other minor children were born to the wife since the date of the parties' marriage, and neither party nor any of the children receive public assistance.
The parties have agreed on the record and in their proposed orders on joint legal custody of the minor children, the mother to have their primary physical custody, and the father to have reasonable rights of visitation. The court finds that joint legal custody is in the best interests of the children in the circumstances of this case.
The parties also agreed in their pleadings that their marriage has broken down irretrievably. This was clearly confirmed by the evidence, and the court so finds.
The wife is 33 years old is a high school graduate and in good health. She has worked as a bank teller and as a sales clerk at Stop Shop and held similar jobs in the past during the marriage. She now works as a bank teller at Liberty Bank full time and half days on Saturdays, and works part time at Stop Shop one day a week. She earns a total of $395 gross per week from both jobs and nets about $285 per week. She anticipates a $20 per week increase from her bank job imminently.
The husband is 34 years old, has a high school graduate equivalency diploma and a welding certificate. He served an apprenticeship and belongs to a union now. He has CT Page 9160 worked for himself in the past as a self-employed welder; but about four years ago, he began working as a union iron worker on construction jobs, including the Indian casino in Ledyard, Connecticut, from which he was laid off about one week before this trial commenced.
In the course of his union employment, he has earned wages of about $28,000 per annum gross. In 1992, however, he earned about $38,000, and in 1993, until his layoff in September, he earned about $35,000. This increased gross income was largely due to his working a great amount of overtime on the Ledyard casino construction and was characterized by him as unusual and unlikely to recur on a regular basis. He also receives a small disability payment of $19.30 per week arising from his military service, from which he was discharged for psychological or psychiatric reasons.
The parties knew each other as teenagers, and, according to the wife, the parties experienced problems from the beginning of the marriage. These included excessive drinking by the husband, his use of marijuana and propensities for violence from time to time. The wife attended Al-Anon and went for about a year. She described the marriage as a disaster. The husband, on his part, accused the wife of having an affair, which she denies, was arrested for driving under the influence and admits some of the violence but denies its level and frequency. He also admits drinking alcohol but not to the extent the wife claims, and in any event, he denies drinking for the past two years. He claims the wife joined him in marijuana use. He was bitterly disappointed when he discovered she was not a virgin at the time of their marriage.
Although the wife never sought counseling (aside from Al-Anon) or sought a restraining order, or called the police after any of the violent incidents claimed, the court finds her testimony as to the reasons and causes of the marriage breakdown credible. Accordingly, the court finds that the responsibility of the breakdown must be shared by both parties, however, the court assesses a larger share to the husband.
Over their twelve-year marriage, the parties have accumulated only the following substantial assets: their CT Page 9161 jointly-held home, valued at $71,500, with a mortgage balance of $62,247 and an equity of about $9,200; and a time share condominium at Inn on Longwharf worth about $8,000. They each have automobiles and the wife has a 401K worth $600 through her employment at Liberty Bank. The husband has retirement and annuity plans valued at about $30,000 plus interest which will accrue on or about December 31, 1993.
The court finds that the husband has a higher earning capacity than the wife, although his employment is punctuated with layoffs due to both seasonal and economic conditions. He also loses pay as work is often stopped during inclement weather. The court also finds that the parties equally contributed to the acquisition of their assets, although more of the wife's contributions were nonmonetary, in that she was the primary caretaker for the children.
The court also finds arrearages due to the wife from the husband of $2,280 for unpaid child support as of September 24, 1993.
At the request of the parties, a decree dissolving the marriage was entered at the conclusion of trial on September 24, 1993; also, an order granting joint legal custody to the parties was entered with primary physical custody to the mother and reasonable rights of visitation to the father as follows: The first, third and fourth weekends each month from Friday at 4:30 p.m. to Sunday at 7:00 p.m.; in the event the weekend is followed by a Monday which is a legal holiday, then father shall have the children until 6:00 p.m. Monday. In addition, he shall have visitation Tuesdays and Thursdays of the off-week or weeks from 5:00 p.m. to 7:00 p.m. Father shall be prompt when he picks up and returns the children.
In addition, father shall have two consecutive weeks in the summer, provided he gives sixty days written notice to mother designating the weeks, but not later than June 1; the February school vacation; Father's Day from 10:00 a.m. to 6:00 p.m., alternating school holidays, Thanksgiving, Christmas and Easter. If Thanksgiving Day precedes father's regularly scheduled weekend, then he may have them with him through Sunday. Mother shall have the children on Mother's Day from 10:00 a.m. to 6:00 p.m. and shall be entitled to CT Page 9162 take the children to Florida for Christmas in 1993 from December 18, 1993 through January 3, 1994, and father shall have Thanksgiving in 1993. In the event regular weekend visitation conflicts with alternating holiday visitation then the holiday visitation shall supersede. Neither party shall move beyond a fifty-mile radius from their present residence without first giving written notice of their intent at Least ninety days before such move.
The court also ordered the present child support order of $280 per week to continue and reserved the right to modify said child support retroactive to July 30, 1993.[1]
That child support order was entered on December 2, 1992 and was in compliance with the child support guidelines based on the husband's net weekly income of $680. The parties, however, modified this order by the wife accepting sums of $200, $240 or $280 per week depending on his overtime earnings.
The plaintiff wife contends that the husband's gross earnings of about $936.30 per week and net of $632 per week justifies a child support order of $279 per week. She bases this on the husband's 1993 earnings prior to his layoff, over a 33-week period to August 22, 1993. She has not factored into this calculation his aggregate earnings for the four weeks before the date of trial.
On the other hand, the husband contends that his $290 per week gross unemployment compensation, and a net of $245, should be used to determine child support, which would lead to $109 per week according to the guidelines The husband neglected to include in his calculation the $19.30 per week disability payment, which then would at a minimum raise the support order to $130 per week.[2]
The court finds from the husband's pay stubs and calculation by counsel placed in evidence that his average net income, including all overtime and his so-called "vacation" pay, was closer to $590 per week because of the travel pay which should be deducted.
Also, because approximately $7,000 of overtime was included in his gross income of $34,187 (as of August 22, 1993, year to date) and the uncertainty of obtaining such overtime in the future, the court concludes that his true net CT Page 9163 earning capacity is about $480-$500 per week.
He therefore has an established earning capacity of about $500 net per week, which under these circumstances and considering the guidelines, would dictate an order of $230 per week child support total for the three children.
Accordingly, the husband is ordered to pay $230 per week as total child support for the three children retroactive to July 30, 1993 until the week ending September 13, 1993, when it shall be reduced to $180[3] per week until he regains full-time employment; at that point, he shall resume the $230 per week child support order. Said order and the arrearage payment hereafter ordered shall be secured by immediate wage execution. He shall advise the wife promptly of his resumption of employment and the parties shall exchange copies of their federal income tax returns for the calendar year 1993 on or before April 1, 1994 and annually thereafter. The parties shall calculate and apply any credit due the husband against the arrearage of $2,280 which balance shall be paid at the rate of $20 per week commencing when husband resumes his employment.
The husband shall continue to maintain his health and medical insurance for the benefit of the children and the parties shall equally split and pay any health and medical bills unreimbursed or uncovered by said insurance. A General Statutes 46b-84(c) order shall enter and husband shall pay the wife his portion of any such bills within sixty days of their presentation to him together with a copy of a statement of explanation.
The father shall have the internal revenue income tax dependency exemptions for the youngest and oldest children; the mother, the middle child. Each shall cooperate with the other in filing any forms required to secure the exemptions. The court has considered all of the factors in General Statutes 46b-81 and 46b-82 in light of the evidence, findings and child support orders above recited and enters the following orders as part of the decree of dissolution of the marriage entered effective September 24, 1993.
The husband shall convey by quitclaim deed all his right, title and interest in and to the jointly-owned CT Page 9164 dwelling at 6 Woodlawn Avenue, Waterford, Connecticut, to the wife, subject to the mortgage thereon, which she shall assume and pay and save him harmless thereon.
She shall also take and have, free of any claims of the husband, the 1991 Dodge automobile, the tangible personal property, household effects and furnishings now in her possession, her savings account and 401K plan.
The wife shall convey all her right, title and interest in and to the time share condominium known as "Inn on Longwharf", Newport, to the husband and he shall save her harmless from all liabilities thereon.
The husband shall also have free of any claims of the wife the tangible personal property now in his possession, his savings and bank accounts, the vehicle he now drives, his tools, and his welder.
The parties shall cooperate with each other and shall execute and deliver all documents necessary to effect transfers of title.
No alimony shall be awarded to either party.
The husband shall pay to the wife, toward her attorney's fees, the sum of $500 by equal monthly payments of $50 commencing November 1, 1993, as the court finds that a total denial of attorney's fees would undermine the other financial orders entered. The court has considered in this regard the wife's failure to cooperate and join with husband in filing a joint federal income tax return for 1992, thus causing the family unit a loss of funds and increasing the level of contentiousness of this litigation.
The wife shall irrevocably designate the minor children as beneficiaries of the $10,000 life insurance policy shown on her financial affidavit.
The debts and liabilities on the parties' affidavits are allocated as follows:
The husband shall pay the debt in the amount of $2,000 to Thomas E. Bateman, Sr. and seventy-five (75%) percent of the Mastercard bill in the amount of $4,151, as CT Page 9165 shown on his financial affidavit, and the time share bill shown on the wife's financial affidavit. The wife shall pay all of the liabilities shown on her financial affidavit, except for the time share bill of $300, and twenty-five (25%) percent of the Visa/Mastercard bill which is identical to the bill described as the Mastercard bill on the husband's financial affidavit. Each shall save the other harmless from the liabilities each has been ordered to pay herein.
The husband shall transfer to the wife, by Qualified Domestic Relations Order (QDRO), twenty (20%) percent of his retirement and annuity plans, valued as of December 31, 1993, which shall include any accrued interest or other accretions to the plans accumulated and to be credited to them for the calendar year 1993. In the interim, while the documentation is being processed for the transfer, husband shall do nothing to impair said plans, or withdraw funds therefrom. The court shall retain jurisdiction to modify the QDRO to comply with federal or state law relating to retirement/pension plans.
Teller, J.